# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

BIU, LLC,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petition for Review of an Order of
the Federal Communications Commission

## BRIEF FOR RESPONDENTS

Jonathan S. Kanter
   *Assistant Attorney General*

Robert Nicholson
   *Attorney*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

P. Michele Ellison
   *General Counsel*

Jacob M. Lewis
   *Deputy General Counsel*

Igor Helman
   *Counsel*

FEDERAL COMMUNICATIONS
   COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A) **Parties and Amici.** The petitioner is BIU, LLC (BIU). The respondents are the Federal Communications Commission and the United States of America. There are no amici.

(B) **Rulings Under Review.** The petition for review challenges the following order of the Federal Communications Commission: *In re Spectrum Five LLC Petition for Enforcement of Operational Limits and for Expedited Proceedings to Revoke Satellite Licenses*, FCC 24-39 (rel. Apr. 11, 2024) ("*Order*"), *reprinted at* PA305-309.[*]

(C) **Related Cases.** The *Order* under review has not previously been before this Court or any other court. Petitioner previously sought review of an underlying order of the FCC's Enforcement Bureau, but because BIU had not filed an application for review of that order by the full Commission, this Court dismissed that petition as "incurably premature." *BIU, LLC v. FCC*, No. 23-1163, 2023 WL 6938136, at *1 (D.C. Cir. Oct. 19, 2023). Respondents are aware of no other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

---

[*] "PA_" refers to pages in BIU's appendix, filed on September 9, 2024. "Pet'r Br. _" refers to pages in BIU's opening brief, filed that same day.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ......................................... i

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ............................................ 2

STATEMENT OF THE ISSUES................................................. 2

PERTINENT STATUTES AND REGULATIONS ..................... 3

STATEMENT OF THE CASE .................................................... 3

    A.    Statutory And Regulatory Background .................... 3

    B.    Factual Background ................................................. 4

    C.    Subsequent Proceedings Before The Enforcement Bureau And The Commission ................................... 6

        1.    Proceedings Before The Enforcement Bureau .............. 6

        2.    The *Order* Under Review ............................... 7

STANDARD OF REVIEW......................................................... 9

SUMMARY OF THE ARGUMENT .......................................... 10

ARGUMENT............................................................................. 11

I.    THE COMMISSION CORRECTLY DECLINED TO REINSTATE THE SPECTRUM FIVE PETITION.................................... 11

    A.    BIU's Application For Review Was Untimely And Therefore, Properly Dismissed ............................. 11

    B.    The Commission's Decision To Abstain From Resolving A Private Contractual Dispute Was Neither Arbitrary Nor Capricious Nor An Abuse Of Discretion........................ 13

CONCLUSION ......................................................................... 18

CERTIFICATE OF COMPLIANCE.......................................... 20

# TABLE OF AUTHORITIES*

**Cases**                                                    **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................... 17

*BIU, LLC v. FCC*, 2023 WL 6938136 (D.C. Cir. Oct. 19, 2023) .............. 9

*Cal. Ass'n of the Physically Handicapped, Inc. v. FCC*, 840 F.2d 88
   (D.C. Cir. 1988) ......................................................... 18

*Cellco P'ship v. FCC*, 357 F.3d 88 (D.C. Cir. 2004) ................................. 9

*\*Environmentel, LLC v. FCC*, 661 F.3d 80 (D.C. Cir. 2011) ...... 13, 14, 16

*\*Listeners' Guild, Inc. v. FCC*, 813 F.2d 465 (D.C. Cir. 1987).... 13, 16, 18

*NTCH, Inc. v. FCC*, 841 F.3d 497 (D.C. Cir. 2016) ................................. 9

*NTCH, Inc. v. FCC*, 877 F.3d 408 (D.C. Cir. 2017) ................................. 9

*Radio Station WOW v. Johnson*, 326 U.S. 120 (1945) ........................... 15

*Regents of Univ. Sys. of Ga. v. Carroll*, 338 U.S. 586 (1950) ................. 14

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d
   109 (D.C. Cir. 2020) .................................................. 13

*West Corp. v. AT&T Corp.*, No. 8:05-cv-88, 2007 WL 14564 (D.
   Neb. Jan. 2, 2007) ...................................................... 17

*World Commc'ns, Inc. v. FCC*, 20 F.3d 472 (D.C. Cir. 1994) ................. 17

**Statutes**

28 U.S.C. § 2342 ........................................................................ 2

47 U.S.C. § 402 ........................................................................ 2

47 U.S.C. § 405 .................................................................. 3, 7, 12

---

*\* Authorities upon which we chiefly rely are marked with asterisks.*

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

5 U.S.C. § 706 ........................................................................................ 9

**Regulations**

47 C.F.R. § 1.115 .......................................................... 4, 8, 10, 11

47 C.F.R. § 1.4 ................................................................................... 8

**Other Authorities**

*In re Merkley*, 94 F.C.C.2d 829 (1983) ............................................ 14, 15

*In re Roy M. Speer*, 13 FCC Rcd 19911 (1998)................................. 13, 16

*In re Telecellular de P.R., Inc.*, 14 FCC Rcd 20723 (1999) ..................... 15

*In re Tsooris Corp.*, 12 FCC Rcd 1675 (1997) ......................................... 15

No. 24-1189

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

BIU, LLC,

*Petitioner*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*.

On Petition for Review of an Order of
the Federal Communications Commission

## BRIEF FOR RESPONDENTS

## INTRODUCTION

This matter concerns a contractual dispute arising from the

withdrawal of a petition that Spectrum Five, a satellite company, had

filed with the Federal Communications Commission against another

satellite company, Intelsat.  After Spectrum Five withdrew the petition,

petitioner BIU, LLC (BIU) claimed that it was a lender to Spectrum

Five, that Spectrum Five was in default of several lending agreements,

and that as a result of this default, Spectrum Five lacked authority to

withdraw the petition. Rather than adjudicating the contractual dispute in a court, however, BIU sought reinstatement of the petition and, when that request was denied by the FCC's Enforcement Bureau, filed an untimely application for review with the full Commission.

The Commission dismissed the application for review as untimely. In the alternative, the Commission denied the application because resolving it would require the Commission to decide a private contractual dispute, contrary to its long-standing policy of abstaining from resolving such private matters. BIU now seeks review in this Court. Because BIU cannot demonstrate any error in the Commission's handling of the case, this Court should deny the petition for review.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the petition pursuant to 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a). The Commission released the *Order* on review on April 11, 2024. PA305-309. BIU timely filed a petition for judicial review of that order on June 7, 2024.

## STATEMENT OF THE ISSUES

1. Whether the Commission correctly dismissed as untimely BIU's application for review that was filed almost a month after the 30-day regulatory deadline.

2.    Whether the Commission reasonably abstained from resolving a private contractual dispute between BIU and its borrower Spectrum Five.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are set forth in the statutory addendum bound with this brief.

## STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

Section 405 of Title 47 allows reconsideration of orders and decisions made by the Commission or by one of its bureaus:  "After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under section 155(c)(1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for reconsideration only to the authority making or taking the order, decision, report, or action."  47 U.S.C. § 405(a).  "A petition for reconsideration must be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of."  *Id.*

Additionally, pursuant to 47 C.F.R. § 1.115, "[a]ny person aggrieved by any action taken pursuant to delegated authority may file an application requesting review of that action by the Commission." *Id.* § 1.115(a). However, such an application "shall be filed within 30 days of public notice of such action." *Id.* § 1.115(d).

## B. Factual Background

Between 2002 and 2014, the Commission's International Bureau (now known as the Space Bureau) granted a series of licenses to PanAmSat and its successor, Intelsat License LLC (Intelsat), to launch and operate satellites at the 95 degrees west longitude orbital location (95W). *E.g.*, PA018-020. In November 2020, a satellite company called Spectrum Five filed a petition with the Commission regarding Intelsat's satellites. PA305. Spectrum Five's petition alleged that the operation of Intelsat's satellites at 95W violated the terms of its licenses and asked the Commission to initiate proceedings to revoke those licenses. *Id.*; *see* Pet'r Br. 2-3; *see also* PA007-044 (Spectrum Five petition).[1]

---

[1] Spectrum Five's petition alleged that Spectrum Five's own satellite authorization at 95W had priority, that Intelsat made false certifications in its FCC applications, that Intelsat's satellites exceeded certain limits set by its licenses, and that Intelsat had falsely accused Spectrum Five of causing interference to Intelsat's operations at 95W. Pet'r Br. 2-3.

On April 12, 2023, while Commission review of the petition remained pending, counsel of record for Spectrum Five filed a letter withdrawing the petition. PA305-306; *see* PA104. The letter was filed in IB Docket 20-399 via the FCC's publicly accessible Electronic Comment Filing System. PA104. In response, 12 days later—on April 24, 2023—the Enforcement Bureau issued an order dismissing the Spectrum Five petition with prejudice. PA105. No party sought Commission review of the bureau's dismissal order.

Instead, on June 9, 2023, petitioner BIU sought to reinstate the petition and to reopen the docket, alleging that the withdrawal of the Spectrum Five petition was "procured by fraud" at the direction of its Chairman and CEO, R. David Wilson. PA106-110 (BIU reinstatement request). BIU explained that it was a lender to Spectrum Five, that it and Spectrum Five had entered into several loan and security agreements, and that Spectrum Five was in default as those loans were "not paid by August 1, 2021." PA108.

BIU's reinstatement request additionally asserted that Spectrum Five's default on the various loan agreements meant that BIU was "appointed . . . as Spectrum Five's true and lawful attorney-in-fact." *Id*. According to BIU, Mr. Wilson had "agreed not to interfere with" BIU's

"lobbying efforts . . . on behalf of" Spectrum Five's satellite rights. *Id.* BIU further claimed that neither Spectrum Five's counsel of record nor Mr. Wilson had authority to withdraw the Spectrum Five petition. PA109-110.

### C. Subsequent Proceedings Before The Enforcement Bureau And The Commission

#### 1. Proceedings Before The Enforcement Bureau

In response to BIU's reinstatement request, on August 11, 2023, the chief of the Enforcement Bureau sent a letter to Spectrum Five's outside counsel. PA230. The letter apprised Spectrum Five and its counsel of BIU's allegations and sought to provide both Spectrum Five's counsel and "Mr. Wilson with an opportunity to respond to the allegations." PA230.

Spectrum Five provided a response, signed by Mr. Wilson, which vigorously denied fraud and accused BIU of a variety of failings. PA231-233. Spectrum Five suggested that the contractual provisions on which BIU sought to rely regarding BIU's appointment as "attorney-in-fact" related to performance of ministerial functions on behalf of Spectrum Five, such as signing tax filings. PA233.

On November 13, 2023, the Enforcement Bureau dismissed BIU's reinstatement request as untimely. PA300. The bureau's order, which was sent to BIU's counsel by certified mail, PA303, explained that pursuant to 47 U.S.C. § 405(a) and "section 1.106(f) of the Commission's rules, a petition for reconsideration must be filed within 30 days from the date of public notice of the Commission action." PA301. Here, the "last day for filing an acceptable petition for reconsideration [was] May 24, 2023," making BIU's reinstatement request—filed on June 9, 2023— untimely. PA301-302.

As an alternative ground, the bureau denied BIU's request because "BIU has not demonstrated that the withdrawal of the Spectrum Five [p]etition was procured by fraud on the Commission's processes." PA302. Rather, the bureau explained, this was "a matter of private contract dispute between BIU and Spectrum Five." *Id.* As such, this dispute was one that was justiciable "in a court of competent jurisdiction and not by the Commission." *Id.*

### 2. The *Order* Under Review

On January 12, 2024, BIU filed an application for review of the Enforcement Bureau's November 13, 2023 order. PA305. BIU's application for review largely repeated its earlier arguments—alleging

that the withdrawal of the Spectrum Five petition was procured by fraud and that, based on loan and security agreements with Spectrum Five, BIU was its "exclusive attorney-in-fact" with sole authority to dismiss the Spectrum Five petition.  PA306.

The Commission's *Order* dismissed BIU's application for review as untimely.  The *Order* explained that pursuant to "section 1.115(d) of the Commission's rules, an application for review must be filed within 30 days from the date of public notice of the Commission Action."  PA307 (citing 47 C.F.R. § 1.115(d)).  Here, BIU had until December 13, 2023, to file an application for review of the November 13, 2023 Enforcement Bureau order.  *Id.* (citing 47 C.F.R. § 1.4 regarding the computation of time).  BIU, however, waited almost two months—"approximately one month after the deadline"—before filing its application for review on January 12, 2024.  *Id.*  Because BIU "offered no explanation for its late filing nor . . . [sought] a waiver," the Commission dismissed the application as untimely.  *Id.*

In the alternative, the Commission's *Order* denied the application for review because BIU failed to demonstrate any error.  *Id.*  The *Order* observed that the Enforcement Bureau "correctly explained that the matter here is a private contractual dispute between BIU and Spectrum

Five as to whether Mr. Wilson had authority to withdraw the [Spectrum Five p]etition based on competing interpretations of contractual language in the[] loan agreements." PA308. And such a dispute is a matter for judicial resolution. PA308-309.

BIU now petitions for review in this Court.[2]

## STANDARD OF REVIEW

BIU bears a heavy burden to establish that the *Order* is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Under this 'highly deferential' standard of review, the court presumes the validity of agency action . . . and must affirm unless the Commission failed to consider relevant factors or made a clear error in judgment." *Cellco P'ship v. FCC*, 357 F.3d 88, 93-94 (D.C. Cir. 2004); *see also NTCH, Inc. v. FCC*, 841 F.3d 497, 502 (D.C. Cir. 2016).

---

[2] On June 28, 2023, prior to receiving a response from the Enforcement Bureau to its June 9 reinstatement request, BIU filed a petition for review in this Court, largely reiterating allegations that it had raised with the bureau. *BIU, LLC v. FCC*, No. 23-1163 (filed June 23, 2023). This Court dismissed the petition as "incurably premature." *BIU, LLC v. FCC*, 2023 WL 6938136, at *1 (citing *NTCH, Inc. v. FCC*, 877 F.3d 408, 412 (D.C. Cir. 2017)).

## SUMMARY OF THE ARGUMENT

This Court should deny BIU's petition for review. As an initial matter, the Commission's dismissal of BIU's untimely application for review of the Enforcement Bureau's order was proper because BIU failed to file its application within the 30-day period specified by 47 C.F.R. § 1.115(d). Nor did BIU seek waiver or tolling of that deadline.

In any event, the Commission properly followed its long-standing practice of non-involvement in private contractual disputes such as the one between BIU and Spectrum Five. BIU's dispute with Spectrum Five presents classic issues of contract interpretation, including whether there has been a default of various loan agreements, and whether such a default means that BIU is now an "attorney-in-fact" for Spectrum Five with sole authority to withdraw its petition. The proper forum to resolve these contractual issues is a state court and BIU offers no persuasive reason for why it cannot pursue its contract claims there in the first instance.

Finally, although BIU alleges that the withdrawal of Spectrum Five's petition resulted from fraud, those allegations hinge on the contested interpretation of loan agreements that the Commission properly refrained from resolving; this is not a case where the

Commission has undisputed or unequivocal evidence of fraud that

would warrant automatic reinstatement of the petition.

## ARGUMENT

## I. THE COMMISSION CORRECTLY DECLINED TO REINSTATE THE SPECTRUM FIVE PETITION

### A. BIU's Application For Review Was Untimely And Therefore, Properly Dismissed

The Commission correctly dismissed BIU's application for review

as untimely because BIU failed to file it within the 30 days required by

47 C.F.R. § 1.115(d).  It is undisputed that the Enforcement Bureau's

memorandum opinion and order was released on November 13, 2023

and was served by certified mail on BIU's counsel.  PA300, PA303 (¶ 9).

The Commission's regulations specify that "[a]ny person aggrieved by

any action taken pursuant to delegated authority may file an

application requesting review of that action by the Commission,"

provided that such an application "shall be filed within 30 days of public

notice of such action."  47 C.F.R. § 1.115(a), (d).  Accordingly, the last

day for BIU to file its application for review was December 13, 2023.

PA307.  BIU waited almost another month, until January 12, 2024, to

file its application.  And BIU "offered no explanation for its late filing

nor did it seek a waiver."  PA307 & n.26.

Indeed, BIU's application is doubly untimely because, as the Enforcement Bureau explained, BIU was also late in filing its June 9, 2023 reinstatement request, contending that the original Spectrum Five petition was fraudulently withdrawn. PA301-302. BIU does not appear to dispute that it "filed its . . . request on June 9, 2023, over two weeks after the statutory deadline for seeking reconsideration." PA302. Section 405 of Title 47 requires that a "petition for reconsideration must be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of." 47 U.S.C. § 405(a). BIU failed to meet that deadline.

Nor does BIU seriously contest the Commission's timeliness dismissal. Instead BIU relies on precedent that recognizes the Commission's inherent power to reopen a judgment procured by fraud at any time, Pet'r Br. 11, but such reliance is misplaced. Although the FCC possesses that power, as we demonstrate in the following section, BIU has not made a sufficient showing of fraud to justify invoking its power here.

BIU offers no justification for its repeated late filings. Nor does BIU ask for any waiver or tolling of the applicable deadlines. BIU simply asserts that there is "no prejudice" from reinstating the original

Spectrum Five petition.  Pet'r Br. 11-12.  But prejudice is not the sole component of a timeliness inquiry.  BIU's unexcused failure to comply with statutory and regulatory timing requirements means that the Commission's dismissal of its application for review was reasonable. *See Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 117 (D.C. Cir. 2020) (concluding that an agency's "rejection of [appellant's] untimely appeals was neither arbitrary nor capricious").[3]

**B.    The Commission's Decision To Abstain From Resolving A Private Contractual Dispute Was Neither Arbitrary Nor Capricious Nor An Abuse Of Discretion**

The Commission reasonably followed its long-standing policy against becoming involved in private contractual disputes unless presented with clear evidence of fraud.  *See Environmentel, LLC v. FCC*, 661 F.3d 80, 85 (D.C. Cir. 2011); *Listeners' Guild, Inc. v. FCC*, 813 F.2d 465, 469 (D.C. Cir. 1987); *see also In re Roy M. Speer*, 13 FCC Rcd 19911, 19919, ¶ 17 (1998) (noting that "the Commission generally does not adjudicate disputes related to private contractual matters").

---

[3] BIU contends that there "is no prejudice to anyone from reinstatement of the Petition," Pet'r Br. 11.  If that is true, nothing prevents BIU from seeking such reinstatement after it prevails on its contractual argument in a court of competent jurisdiction.

At its core, this case reduces to a contract dispute in which BIU contends that as a result of Spectrum Five's default on certain loan agreements, Spectrum Five ceded authority to BIU over its original petition to enforce the conditions on Intelsat's licenses. But in order to decide if BIU is correct, the Commission would have to determine whether the loans to Spectrum Five are "in default" and whether "BIU is entitled to exercise all rights and remedies under the loan documents," Pet'r Br. 7, as BIU contends. Such determinations, however, "are matters for a state court's review." *Environmentel*, 661 F.3d at 85; *see also Regents of Univ. Sys. of Ga. v. Carroll*, 338 U.S. 586, 602 (1950) ("We do not read the Communications Act to give authority to the Commission to determine the validity of contracts between licensees and others.").

The Commission has sound reasons to refrain from deciding state-law contractual matters. First, the Commission, which is charged with implementation and enforcement of the Communications Act, "does not possess the resources, the expertise or the jurisdiction to adjudicate such claims fully." *In re Merkley*, 94 F.C.C.2d 829, 838, ¶ 18 (1983), *aff'd per curiam*, 776 F.2d 365 (D.C. Cir. 1985). Additionally, the Commission's policy of declining to resolve state-law contractual

disputes is an attempt to "recognize[] the responsibility of local courts in enforcing state laws." *Merkley*, 94 F.C.C.2d at 838, ¶ 17 (citing *Radio Station WOW v. Johnson*, 326 U.S. 120, 132 (1945)). The Commission considers its policy to be "a fair accommodation between [its] licensing jurisdiction [and] the power of state and local courts to adjudicate contractual disputes.*" In re Tsooris Corp.*, 12 FCC Rcd 1675, 1679, ¶ 8 (1997); *see also In re Telecellular de P.R., Inc.*, 14 FCC Rcd 20723, 20725, ¶ 6 (1999) (same).

The agency's decision to abstain from resolving this private contractual dispute is all the more reasonable considering BIU's acknowledgement that it did not at any time obtain operational control of Spectrum Five. PA308 & n.34 (the Commission observing that "BIU did not suggest, nor intend to suggest, that [it] has assumed operational control of Spectrum Five" (quoting BIU's letter to the Enforcement Bureau)).[4] Additionally, the Commission would have to engage in fact

---

[4] BIU claims only that certain contractual provisions gave it power of attorney over Spectrum Five. PA237-238. This claim conflicts with Spectrum Five's interpretation of those provisions; Spectrum Five contends that the "provisions on which BIU relies relate to performance of ministerial functions on Spectrum Five's behalf, such as signing tax filings if required." PA233. Thus, the Commission would have to determine the extent of the rights that were

(cont'd)

finding to determine whether there has been a default on the loans and when such a default occurred.  *See* PA233 n.12 (Mr. Wilson, in his response to the Enforcement Bureau letter, disputing that there has been any default).  The Commission has no reason to enmesh itself in this contractual squabble.  *See Environmentel*, 661 F.3d at 85.

Thus, the Commission was not acting arbitrarily or capriciously; rather, it was simply following its "long-standing policy of refusing to adjudicate private contract law questions for which a forum exists in the state courts."  *Listeners' Guild*, 813 F.2d at 469; *see, e.g.*, *In re Roy M. Speer*, 13 FCC Rcd at 19919, ¶ 17 (noting that "the Commission generally does not adjudicate disputes related to private contractual matters").

BIU asserts that it needed the Commission to act because BIU has "no adequate forum that can stop Intelsat from continuing to violate its licenses."  Pet'r Br. 12 (alleging that "there is no forum available that would allow the public and private interests at stake to be vindicated").  That assertion is a red herring.  The issue is whether BIU has an adequate forum to vindicate its *contract rights*.  And it does:  BIU offers

---

transferred to BIU "based on competing interpretations of contractual language in [the parties'] loan agreements."  PA308.

no reason why it cannot have the underlying contractual dispute adjudicated in a forum that routinely considers contract claims, such as state court. *See* PA309 n.39 (suggesting that BIU "could pursue a civil action in a court of competent jurisdiction alleging that Spectrum Five breached its contract with BIU or otherwise acted without authority"). And should BIU prevail in establishing its rights, it can return to the Commission armed with a court judgment and seek reinstatement of the Spectrum Five petition or other appropriate relief. *E.g.*, *World Comm'ns, Inc. v. FCC*, 20 F.3d 472, 476 (D.C. Cir. 1994) (noting that if petitioner thinks its contract claims are worth pursuing, it could do so in state court and then return to the FCC after securing a judgment in its favor); *West Corp. v. AT&T Corp.*, No. 8:05-cv-88, 2007 WL 14564, at *1 (D. Neb. Jan. 2, 2007) (acknowledging the FCC's practice "not to interpret private contracts" and thus undertaking to do so because the parties' remedies "depend on the interpretation of their contract").

Finally, BIU's contention that the "unauthorized withdrawal of the [p]etition amounts to a fraud on the Commission itself," Pet'r Br. 9, rings hollow. There is no indication here—aside from BIU's conclusory statements—that there has been a fraud on the Commission. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that courts are

not required to credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

BIU's attempt to convert a contractual dispute between it and its borrower into a matter of public interest under the guise of attempting to prevent fraud on the Commission, Pet'r 8, 12, is similarly unavailing. The Commission "enjoys broad discretion in evaluating the statutorily mandated standard of the 'public interest.'" *Cal. Ass'n of the Physically Handicapped, Inc. v. FCC*, 840 F.2d 88, 94 (D.C. Cir. 1988) (quoting *Listeners' Guild*, 813 F.2d at 468). And here, the Commission was not presented with such unequivocal evidence of fraud that its inaction in the face of such evidence was arbitrary, capricious, or not in accordance with law.[5]

## CONCLUSION

The petition for review should be denied.

---

[5] Indeed, the BIU's fraud claim is dependent on resolution of the contract issue. If as BIU asserts, there really was a default which granted BIU certain contractual rights, then it might well be the case that Spectrum Five's withdrawal of the petition was fraudulent. But if—as Spectrum Five claims—there was no default or as a matter of contract interpretation Spectrum Five had the right to withdraw the petition, then BIU's fraud claim evaporates.

Dated: October 9, 2024

Respectfully submitted,

/s/ *Jacob M. Lewis*

P. Michele Ellison
   *General Counsel*

Jacob M. Lewis
   *Deputy General Counsel*

Igor Helman
   *Counsel*

Jonathan S. Kanter
   *Assistant Attorney General*

Robert Nicholson
   *Attorney*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave. NW
Washington, DC 20530

*Counsel for Respondent*
   *United States of America*[6]

FEDERAL COMMUNICATIONS
   COMMISSION
45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

*Counsel for Respondent Federal*
   *Communications Commission*

---

[6] Filed with consent pursuant to D.C. Circuit Rule 32(a)(2).

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1):

    ☒ this document contains <u>3,554</u> words, *or*

    ☐ this document uses a monospaced typeface and contains ____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word for Office 365</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

*/s/ Jacob M. Lewis*
Jacob M. Lewis
*Counsel for Respondents*

# STATUTORY ADDENDUM

# STATUTORY ADDENDUM CONTENTS

**Page**

47 U.S.C. § 405 ............................................................... Add. 2

47 C.F.R. § 1.115 ............................................................ Add. 3

47 U.S.C. § 405 provides in pertinent part:

**§ 405. Petition for reconsideration; procedure; disposition; time of filing; additional evidence; time for disposition of petition for reconsideration of order concluding hearing or investigation; appeal of order**

(a) After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under section 155(c)(1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for reconsideration only to the authority making or taking the order, decision, report, or action; and it shall be lawful for such authority, whether it be the Commission or other authority designated under section 155(c)(1) of this title, in its discretion, to grant such a reconsideration if sufficient reason therefor be made to appear. A petition for reconsideration must be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of. . . . The time within which a petition for review must be filed in a proceeding to which section 402(a) of this title applies, or within which an appeal must be taken under section 402(b) of this title in any case, shall be computed from the date upon which the Commission gives public notice of the order, decision, report, or action complained of.

47 C.F.R. § 1.115 provides in pertinent part:

## § 1.115 Application for review of action taken pursuant to delegated authority.

(a) Any person aggrieved by any action taken pursuant to delegated authority may file an application requesting review of that action by the Commission. Any person filing an application for review who has not previously participated in the proceeding shall include with his application a statement describing with particularity the manner in which he is aggrieved by the action taken and showing good reason why it was not possible for him to participate in the earlier stages of the proceeding. Any application for review which fails to make an adequate showing in this respect will be dismissed.

**\* \* \***

(d) Except as provided in paragraph (e) of this section and in § 0.461(j) of this chapter, the application for review and any supplemental thereto shall be filed within 30 days of public notice of such action, as that date is defined in § 1.4(b). Opposition to the application shall be filed within 15 days after the application for review is filed. Except as provided in paragraph (e)(1) of this section, replies to oppositions shall be filed within 10 days after the opposition is filed and shall be limited to matters raised in the opposition.